UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAMARA ETHERIDGE,

     Plaintiff,

   -against-

CITY OF NEW YORK; NYC
ADMINISTRATION FOR CHILDREN'S
SERVICES; LISETTE HERNANDEZ;
JEREMIAH MASSEY; TAICHE BRYANT;
SUPERVISOR LEVAR FOLK; ELIZABETH
RIVERA; ATTORNEY FOR THE CHILD
RANDEE SIGAL; REFEREE JACOB
MAEROFF; NYC FAMILY COURT –
MANHATTAN; NEW YORK STATE
UNIFIED COURT SYSTEM; NEW YORK
CITY DEPARTMENT OF EDUCATION; NEW
YORK STATE EDUCATION DEPARTMENT;
JUAN PAEZ,

     Defendants.

25-CV-8707 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under the court's federal question

jurisdiction, alleging that Defendants violated her federal constitutional rights, as well as her

rights under state law with respect to a child custody dispute in the New York County Family

Court. On November 24, 2025, without direction from the Court, Plaintiff filed an amended

complaint. By order dated January 22, 2026, the Court granted Plaintiff's request to proceed *in

forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the

Court dismisses the amended complaint, but grants Plaintiff 30 days' leave to replead her claims

in a second amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff Tamara Etheridge brings this action under the court's federal question jurisdiction, alleging that Defendants violated her rights with respect to child custody proceedings in the New York County Family Court ("Family Court"). Plaintiff alleges that she is the legal guardian and paternal grandmother of P.M., a minor child.[1] Named as Defendants are (1) the City of New York ("the City"); (2) the New York City Administration for Children's Services ("ACS"); ACS caseworkers (3) Lisette Hernandez, (4) Jeremiah Massey, and (5) Taiche Bryant; (6) ACS Supervisor Levar Folk; (7) Elizabeth Rivera, a private individual and maternal grandmother of P.M.; (8) P.M's Family Court-appointed attorney Randee Sigal; (9) Family Court Referee Jacob Maeroff; (10) New York County Family Court in Manhattan; (11) the New York State Unified Court System; (12) the New York City Department of Education ("NYC DOE"); (13) the New York State Education Department ("NYSED"); and (14) New York County Family Court Clerk Juan Paez.

The following facts are drawn from the amended complaint.[2] Plaintiff asserts that she is the "final, court-appointed legal guardian" of P.M. (ECF 5, at 7 (capitalization omitted).) She alleges that, in or around June 2024, Defendant Elizabeth Rivera, P.M.'s maternal grandmother, "submitted to various official entities a forged birth certificate for minor [P.M.] that materially altered the child's identifying information and purported custodial status." (*Id.* at 6.)

---

[1] Rule 5.2(a)(3) of the Federal Rules of Civil Procedure requires that any court submissions referring to a minor must only include the minor's initials. The complaint provides the full name of Plaintiff's granddaughter. The Court has therefore sealed electronic access to the complaint and amended complaint in this action. If Plaintiff files any additional documents, she must comply with Rule 5.2(a)(3) by referring to minor children only by their initials.

[2] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

On September 2, 2025, P.M. was "disenrolled" from school in Pennsylvania, and, on September 12, 2025, she was enrolled in a New York City public school under a different surname, which was subsequently changed to the surname by which Plaintiff refers to her. (*Id.* at 7.) Plaintiff maintains that NYC DOE personnel "processed the enrollment after accepting the altered/forged documents" and "failed to follow its student-records verification procedures . . . and federal privacy safeguards." (*Id.* at 7.)

Defendant ACS employees Hernandez, Massey, and Bryant requested from Plaintiff "documents, drug tests, and other intrusive information" even though there was no "authorized, open ACS case concerning Plaintiff at the time." (*Id.* at 7.) Plaintiff asserts that the ACS employees' actions "functioned as harassment and an attempt to justify removal or restriction of Plaintiff's custodial access." (*Id.* at 7.) ACS Supervisor Folk "authorized or permitted improper release of [P.M.]'s original birth certificate to Rivera and otherwise ratified ACS staff members misconduct, contrary to required procedures for release of sensitive records." (*Id.* at 7.)

Defendant Sigal, P.M's court-appointed attorney in the Family Court proceedings, "provided inconsistent, misleading, and biased communications to Plaintiff and the court, including failure to fully disclose exculpatory material and factual inaccuracies concerning custody and placement." (*Id.* at 8.)

In the course of proceedings in the Family Court, Referee Maeroff "issued and maintained court orders" that Plaintiff asserts "(a) were not supported by competent evidence, (b) reflected procedural irregularities and ex parte communications, and (c) were retaliatory in nature." (*Id.* at 8.)

Defendant Rivera, P.M.'s maternal grandmother, made "public statements and social-media posts" while the Family Court proceedings were ongoing, "including recorded calls and

online posts that damaged Plaintiff's reputation and contributed to an environment enabling continued deprivation of parental association." (*Id.* at 8.)

Plaintiff asserts that the Family Court and the New York State Unified Court System "either failed to correct known conflicts of interest, failed to ensure impartial adjudication, or allowed administrative and procedural practices that resulted in persistent violations of Plaintiff's constitutional rights." (*Id.* at 8.)

Plaintiff asserts claims for (1) deprivation of parental rights without due process; (2) violation of her right to equal protection; (3) conspiracy under 42 U.S.C. sections 1985(3) and 1986; (4) fraud; (5) the Family Educational Rights and Privacy Act and NYCDOE regulations; (6) defamation; (7) intentional infliction of emotional distress; (8) negligent hiring, supervision, and retention; (9) "abuse of power/official misconduct" (*id.* at 13); and (10) "declaratory and injunctive relief" (*id.*).

Plaintiff seeks a permanent injunction restoring custody of P.M. to her and ordering P.M.'s "immediate return" to Plaintiff's custody; an order directing Defendants "to expunge, correct, and deliver to Plaintiff all original and derivative records that are forged, false, or unlawfully maintained" (*id.* at 14); and money damages.

Plaintiff attaches to the complaint various orders from the New York County Family Court. Among those orders are an October 9, 2025 order, signed by Referee Maeroff directing that, among other things, P.M. shall not be removed from the State of New York; P.M. shall be placed in the care of her maternal grandmother, Elizabeth Rivera; Rivera is authorized to enroll P.M. in school in New York; Rivera shall be authorized to add P.M. to her health insurance and consent to medical care for P.M.; and Plaintiff shall have in-person, supervised visitation with P.M. in New York. (*Id.* at 22-23.)

The attachments also include an earlier, August 12, 2025, order from Referee Maeroff ordering that P.M. shall immediately be returned to the State of New York and not again removed from the state without further order from the court; that P.M. be placed in the care of Rivera; and that P.M. shall be enrolled in school in New York for the 2025-2026 school year. (*Id.* at 27.)

## DISCUSSION

### A.    Eleventh Amendment

The Court must dismiss Plaintiff's claims against the New York State Unified Court System, the New York County Family Court, and the NYSED. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity[.]" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). This immunity shields states from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. The New York State Unified Court System and individual state courts, including family courts, are arms of the state that are entitled to Eleventh Amendment immunity. *See Gollomp*, 568 F.3d at 368 ("[T]he New York State Unified Court System is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." (citation omitted)); *Murray v. Thompson*, No. 17-CV-7004 (VB), 2018 WL 5113955, at *4 (S.D.N.Y. Oct. 19, 2018) (holding that a New York Family Court is an arm of the State of New York and is entitled to Eleventh Amendment immunity). The NYSED is also an arm of the State of New York that enjoys immunity under the Eleventh Amendment. *See Hayes v. Williamsville Cent. Sch. Dist.*, 506 F. Supp. 2d 165, 169-70 (W.D.N.Y. 2007) ("[T]his Eleventh

Amendment immunity from suit extends to the defendant [New York State] Education Department.").

New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Court therefore dismisses Plaintiff's claims against the New York State Unified Court System, the New York County Family Court, and the NYSED as barred by the Eleventh Amendment. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

**B.      New York City Administration for Children's Services**

Plaintiff's claims against ACS must be dismissed because an agency of the City of New York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses Plaintiff's claims against ACS for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In light of Plaintiff's *pro se* status, the Court will construe any allegations she asserts against ACS as being asserted against the City of New York, which is also a named defendant in this action.

**C.      Municipal liability**

When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The

7

plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Here, Plaintiff asserts claims arising from her own singular experience with the City of New York and the NYC DOE. She does not allege any facts suggesting that the City or the NYC DOE has a policy, practice, or custom that cause a violation of her federal rights. The Court therefore dismisses Plaintiff's claims against the City of New York and the NYC DOE for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead her claims against these defendants in a second amended complaint that complies with the rest of this order and alleges facts showing that the City of New York and NYC DOE have a policy, practice, or custom that violated her constitutional rights.

### D.    Judicial immunity and quasi-judicial immunity

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot

8

overcome judicial immunity." *Id.* (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Here, Plaintiff sues Family Court Referee Maeroff and Family Court Clerk Paez. Court referees are generally entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties. *See Wilson v. Wilson-Polson*, 446 F. App'x 330, 331 (2d Cir. 2011) (holding family court referee was entitled to absolute judicial immunity); *Dudley v. Hochul*, No. 24-CV-0048, 2024 WL 1906594, at *8-9 (N.D.N.Y. May 1, 2024) (same); *Khrapko v. Splain*, 389 F. Supp. 3d 199, 205 (W.D.N.Y. 2019) ("The law is clear that court referees are entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties.").

Judicial immunity has been extended to court clerks and "others who perform functions closely associated with the judicial process" when they are performing discretionary acts of a judicial nature which are essential to the judicial process, including the filing of court documents and managing a court's calendar. *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *see Hubbuch v. Small*, No. 25-956, 2026 WL 471800, at *1 (2d Cir. Feb. 19, 2026) (explaining that quasi-judicial immunity "absolutely protects court clerks in their performance of judicial functions" and "extends to the exercise of the court's inherent power to control its docket and the parties' filings"). Courts have also extended Section 1983's grant of immunity from injunctive and declaratory relief to court employees, such as court clerks, who are entitled to quasi-judicial immunity. *See Treistman v. McGinty*, 804 F. App'x 98, 100 (Mem) (2d Cir. May 14, 2020); *Irazu v. Sainz De Aja*, No. 23-702-cv, 2023 WL 8447256, at *2 (2d Cir. Dec. 6, 2023) (summary order).

9

Moreover, Section 1983, as amended in 1996, provides that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Where an appeal is available, declaratory relief is available. *See, e.g.*, *Davis v. Campbell*, No. 13-CV-0693, 2014 WL 234722, at *9 (N.D.N.Y. Jan. 22, 2014) ("[D]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order.").

Plaintiff's claims against Family Court Referee Maeroff and Family Court Clerk Paez are based on actions taken in their judicial or quasi-judicial capacities.[3] Because Plaintiff does not allege that either defendant acted outside of his judicial or quasi-judicial capacity or lacked jurisdiction, or violated a declaratory decree or that declaratory relief was unavailable, the Court dismisses Plaintiff's claims for damages and injunctive relief against these defendants as barred by judicial and quasi-judicial immunity. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

### E.    *Younger* abstention

Inasmuch as Plaintiff's child custody proceedings are pending in Family Court, this Court may not intervene in them by granting the injunctive relief she seeks. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith.[4] Application of the *Younger* abstention doctrine has been extended to the three following

---

[3] Although Plaintiff does not allege any specific facts about how Paez violated her rights, her allegations with respect to her Family Court proceedings strongly suggest that she seeks to hold him liable for his role in managing the court's docket and handling court filings.

[4] A civil proceeding is pending for purposes of *Younger* abstention if further state appellate remedies are available at the time of filing of the federal complaint. *Gristina v. Merchan*, 131 F.4th 82, 87 (2d Cir. 2025).

categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). Courts have held that at least one of those categories encompasses pending state court child custody proceedings, as "it is well-settled that a custody dispute . . . raises important state interests." *Stumpf v. Maywalt*, 605 F. Supp. 3d 511, 517 (W.D.N.Y. 2022). Thus, when a "federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings—a subject in which the states have an especially strong interest," *Younger* abstention is warranted. *Falco v. Justs. of the Matrim. Parts of the Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (internal quotations omitted). To show bad faith, a plaintiff must show that "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive" and that she "ha[s] no reasonable expectation of obtaining a favorable outcome." *Lowell v. Vermont Dep't of Child. & Fam.,* 835 F. App'x 637, 640 (2d Cir. Dec. 1, 2020) (citing *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002)).

Plaintiff's claims for injunctive relief "are based solely on the state custody proceedings and . . . involve the state's compelling interest in protecting the welfare of children." *Stumpf*, 605 F. Supp. 3d at 518 (*Younger* abstention doctrine applied where "Plaintiff ask[ed] the Court to declare unconstitutional and to dismiss the state custody proceedings, based on his allegations relating to Defendants' procedure for removing his children, alleged coercion they used during that process, and making untrue statements during the state custody proceedings"); *see also Lowell v. Vermont Dep't of Child. & Fams.,* 835 F. App'x 637, 640 (2d Cir. 2020) (holding that generally the "ability to raise constitutional claims in subsequent state-court judicial review . . . is

sufficient . . . and bar[s] federal courts from taking jurisdiction over the same claims while the state proceeding is pending."). Furthermore, Plaintiff's vague allegations that Referee Maeroff issued orders that were "not supported by competent evidence" and "reflected procedural irregularities" (ECF 5, at 8), are insufficient to suggest bad faith in Plaintiff's Family Court proceedings. To the extent those state court proceedings are ongoing, the Court will not intervene in them and denies Plaintiff's request for injunctive relief.

## F. *Rooker-Feldman* doctrine

To the extent Plaintiff is asking the Court to review and overturn a final judgment in her state Family Court proceedings, the Court lacks subject matter jurisdiction of her claims. Congress has vested appellate jurisdiction over state court judgments exclusively with the United States Supreme Court. *See* 28 U.S.C. § 1257; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (["Section] 1257, as long interpreted, vests authority to review a state court's judgment solely in" the Supreme Court). A litigant seeking relief from a state court judgment may appeal within the state system and file a petition for a writ of certiorari to the United States Supreme Court. Federal district courts, such as this one, lack subject matter jurisdiction to review state court decisions.

Specifically, such claims are barred under the *Rooker-Feldman* doctrine. The doctrine – created by two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983)—precludes federal district courts from reviewing final judgments of the state courts. *Exxon Mobil Corp.*, 544 U.S. at 284 (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."); *see Harriot v. JP Morgan Chase Bank NA*, No. 16-CV-0211 (GBD), 2016 WL

12

6561407, at \*3 (S.D.N.Y. Oct. 21, 2016) ("[Under *Rooker-Feldman*,] federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments, including claims that are inextricably intertwined with a prior determination of a state court." (internal quotation marks and citations omitted)). The *Rooker-Feldman* doctrine applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, to the extent that Plaintiff criticizes any final Family Court custody orders in an effort to request that this Court overturn that final decision, the *Rooker-Feldman* doctrine bars this Court from granting Plaintiff such relief.

### G.   Domestic relations abstention doctrine

Plaintiff's claims also implicate a narrower abstention doctrine for domestic matters. A federal district court generally must abstain from exercising federal question jurisdiction of claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child" so long as those claims may be fully and fairly determined in the state courts. *See Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) (affirming district court's dismissal of child custody claims on abstention grounds where the district court had federal question jurisdiction).

A plaintiff need "not request [a federal court] to alter the state court's [domestic relations] determination" outright for a court to abstain from exercising federal question jurisdiction. *McArthur v. Bell*, 788 F. Supp. 706, 709 (E.D.N.Y. 1992). Rather, courts must abstain when they "would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings." *Id.*; *see Deem*, 941 F.3d at 620 (domestic relations

13

abstention doctrine applied where Plaintiff claimed defendants "conspired . . . to violate his right to intimate association with his children" through unconstitutional custody proceedings).

Here, Plaintiff seeks an order restoring P.M. to her custody. Claims asking the federal court to award custody of a child are subject to the domestic relations abstention doctrine, *see, e.g., Deem*, 941 F.3d at 624, because addressing these claims would require the Court to "interpret state domestic relations law or immerse itself in domestic relations matters, the [C]ourt must abstain from proceeding with the case due to the state courts' greater interest and expertise in that field." *Evans v. Adams*, No. 22-CV-3882, 2024 WL 306240 (E.D.N.Y. Jan. 26, 2024) (internal quotation marks and citation omitted). Plaintiff's allegations are insufficient to show that she cannot fully and fairly litigate the issue of custody of P.M. in the state courts. Moreover, there is no reason to doubt that the state courts are capable of curing any inadequacies on direct appeal within the state court system. The Court therefore abstains, pursuant to the domestic relations abstention doctrine, from adjudicating Plaintiff's claims regarding the custody of P.M. and dismisses such claims without prejudice.

## H.    Claims against ACS workers

Plaintiff alleges that several ACS employees requested from her "documents, drug tests, and other intrusive information," which she believes "functioned as harassment and an attempt to justify removal or restriction of Plaintiff's custodial access." (ECF 5, at 7.) She also alleges that ACS Supervisor Folk released P.M.'s birth certificate to Defendant Rivera, P.M.'s maternal grandmother, and "ratified" ACS staff members' actions. (*Id.* at 7.)

The Court construes these allegations as asserting procedural and substantive due process claims, as well as claims that these defendants violated her right to equal protection.

### 1. Substantive due process

The substantive component of the Due Process Clause of the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Among these rights are:

> the right of [a] family to remain together without the coercive interference of the awesome power of the state. This right to the preservation of family integrity encompasses the reciprocal rights of both parent and children. It is the interest of the parent in the companionship, care, custody and management of his or her children, and of the children in not being dislocated from the emotional attachments that derive from the intimacy of daily association.

*Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) (internal quotation marks and citations omitted); *see Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (noting that families have "a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state" (internal quotation marks and citation omitted)). Thus, parents have a "constitutionally protected liberty interest in the care, custody and management of their children," and can bring a substantive due process claim to challenge a child's removal.[5] *Southerland v. City of N.Y.*, 680 F.3d 127, 142 (2d Cir. 2011) (internal quotation marks and citation omitted). This right to family integrity "'does not[,] [however,]

---

[5] The Court recognizes that Plaintiff is P.M.'s grandparent, not her parent. "There is 'some disagreement' [in the courts] with respect to 'what precisely constitutes a family for purposes of due process.'" *Sochia v. Herkimer Cnty. Child Protective Servs.*, No. 6:24-CV-1068, 2025 WL 1811182, at *5 (N.D.N.Y. July 1, 2025) (quoting *Rivera v. Marcus*, 696 F.2d 1016, 1022 (2d Cir. 1982)). The "constitutional conception of 'family' has evolved . . . to include relationships among members of what has commonly become known as the 'extended family.'" *Rivera*, 696 F.2d at 2022; *see also Moore v. City of East Cleveland*, 431 U.S. 494, 504 (1977) ("The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable [as the nuclear family] and equally deserving of constitutional recognition."). The Court assumes, for the purposes of this order, that Plaintiff, as P.M.'s grandmother, has a protected liberty interest in the care and custody of P.M.

automatically override the sometimes competing' government interest in protecting children, . . . particularly from harm caused by the parents themselves." *E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 367 (S.D.N.Y. 2010) (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000)), *aff'd sub nom., E.D. & A.D. ex rel. Demtchenko v. Tuffarelli*, 408 F. App'x 448 (2d Cir. 2011) (summary order).

To state a claim for a violation of this substantive due process right, "a plaintiff must demonstrate that the state action depriving [her] of custody was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Cox v. Warwick Valley Cent. Sch. Dist.,* 654 F.3d 267, 275 (2d Cir. 2011) (internal quotation marks and citation omitted). "It is not enough that the government act be incorrect or ill-advised; it must be conscience-shocking." *Id.* (internal quotation marks and citation omitted). Thus, "[o]nly the most egregious official conduct can be said to be arbitrary in th[is] constitutional sense and therefore unconstitutional." *Id.* (internal quotation marks and citation omitted).

Plaintiff's allegations are insufficient to suggest that any individual ACS employee violated her substantive due process right of family integrity. Her allegations that ACS employees requested information from her, required her to take a drug test, and released a copy of P.M.'s birth certification to Defendant Rivera, who is P.M.'s grandmother, cannot be considered egregious, shocking, or arbitrary. The Court therefore dismisses Plaintiff's substantive due process claims against Hernandez, Massey, Bryant, and Folk for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

16

The Court grants Plaintiff leave to replead her substantive due process claims in a second amended complaint that addresses the deficiencies identified above and is consistent with this order.

### 2.      Procedural due process

The Court also construes Plaintiff's allegations as asserting that P.M. was removed from her custody without procedural due process of law. The Due Process Clause of the Fourteenth Amendment protects "against deprivations [of life, liberty, or property] without due process of law." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (internal quotation marks and citation omitted). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted). Determining whether the process provided is adequate requires a weighing of: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the governmental interest at issue. *See Rivera-Powell*, 470 F.3d at 466 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The right of family integrity is a liberty interest protected by the procedural due process protections of the Fourteenth Amendment. *See Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012); *see, e.g.*, *D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 591-92 (S.D.N.Y. 2022); *Grullon v. Admin. For Children's Servs.*, No. 1:18-CV-3129 (LJL), 2021 WL 981848, at *5 (S.D.N.Y. Mar. 16, 2021). "As a general rule . . . before parents may be deprived of the care, custody, or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999). "However, in emergency circumstances, a child may be taken into custody by a responsible State official without court authorization or parental

17

consent." *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003) (internal quotation marks and citation omitted); *Southerland*, 680 F.3d at 142.

Plaintiff does not allege facts suggesting that she was deprived of procedural due process by the ACS employees before P.M. was removed from her custody. Plaintiff attaches to the complaint several orders of the Family Court that show that Plaintiff, who was represented by counsel, appeared and participated in multiple child custody proceedings. She alleges no facts suggesting that she was denied due process during these proceedings. Accordingly, the Court dismisses Plaintiff's procedural due process claim for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead her procedural due process claims in a second amended complaint that addresses the deficiencies identified above and is consistent with this order.

### 3.    Equal protection

Plaintiff alleges that these defendants violated her right to equal protection. (*See* ECF 5, at 10.) The Equal Protection Clause requires that all persons similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where an individual alleges that she was intentionally treated differently from other similarly-situated individuals without any rational basis, she may proceed with a "class of one" equal protection claim. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). In order to prevail in a class-of-one equal protection claim, a "plaintiff[] must show an extremely high degree of similarity between themselves and the

persons to whom they compare themselves." *Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (internal quotation marks omitted).

Although Plaintiff alleges that Defendants "treated [her] differently than similarly situated guardians/parents" (ECF 5, at 10), she does not explain how she has been treated differently, and she does not identify any similarly situated individuals against whom she may be compared. She therefore cannot state a class of one equal protection claim. The Court therefore dismisses the equal protection claim for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead her equal protection claims in a second amended complaint that addresses the deficiencies identified above and is consistent with this order.

## I.    Claims against private parties

To the extent that Plaintiff seeks to assert federal claims under Section 1983 against Defendants Rivera and Sigal, the Court must dismiss those claims. A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). Rivera is a private individual, and Plaintiff alleges that Signal is an attorney who was appointed to represent P.M. in the Family Court proceeding. Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a defendant by

19

private counsel in state proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under Section 1983, regardless of whether that attorney is privately retained or court-appointed. *See Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of law' and therefore are not subject to suit under 42 U.S.C. § 1983."); *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor [subject to Section 1983] because he or she must exercise independent professional judgment on behalf of the clients they represent."). Because both of these defendants are private parties who are not alleged to work for any state or other government body, the Court dismisses Plaintiff's Section 1983 claims against them for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**J.    Claims under FERPA**

Plaintiff seeks to assert claims under the Family Educational Rights and Privacy Act ("FERPA"), alleging that New York City officials violated FERPA's privacy protections for student records. (*See* ECF 5, at 11-12.) The Supreme Court has held, however, that the provision of FERPA that prohibits disclosure of students' educational records, 20 U.S.C. § 1232g(b)(1), does not create a private right of action and is not enforceable under 42 U.S.C. § 1983. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 273 (2002). The Court therefore dismisses Plaintiff's claims under FERPA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**K.    Claims under state law**

Plaintiff's claims for defamation, negligence, fraud, and intentional infliction of emotional distress arise under state law. A district court may decline to exercise supplemental

20

jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines, at this time, to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Although it is unclear whether Plaintiff can allege additional facts to state a viable claim, in light of her *pro se* status, the Court grants Plaintiff 30 days' leave to amend her complaint to cure certain of the deficiencies identified above. The Court grants Plaintiff leave to amend only her claims against the City of New York, the NYC DOE, and ACS employees Hernandez, Massey, Bryant, and Folk.

21

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses the amended complaint for the reasons set forth above. *See* 28 U.S.C. § 1915(2)(B)(ii)-(iii); Fed. R. Civ. P. 12(h)(3).

The Court denies Plaintiff's pending motion to file a second amended complaint (ECF 7) as moot. The Court grants Plaintiff 30 days' leave to replead her claims in a second amended complaint, as detailed above.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   March 16, 2026
         New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge

22